# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                                          |   |                |
|------------------------------------------|---|----------------|
| CONSTANCE WAGONER,                       | ) |                |
|                                          | ) |                |
| Plaintiff,                               | ) |                |
|                                          | ) |                |
| v.                                       | ) | 11-cv-1394-JAR |
|                                          | ) |                |
| DOLLAR GENERAL CORPORATION               | ) |                |
| and DG RETAIL, LLC,                      | ) |                |
|                                          | ) |                |
| Defendants.                              | ) |                |

## MEMORANDUM AND ORDER

On December 15, 2011, Defendant Dollar General Corporation removed this action from Kansas state court. Plaintiff Constance Wagoner originally filed a complaint alleging negligence, specifically premises liability, and seeking damages against Dollar General Corporation resulting from her trip and fall on or about November 7, 2010, within a Dollar General store in Park City, Kansas. Plaintiff added DG Retail, LLC as a co-defendant on March 28, 2012. This matter is before the Court on Defendants' Motion for Partial Summary Judgment (Doc. 44). The motion is fully briefed and ready for the Court's ruling. As described more fully below, the Court grants Defendants' motion in part and denies in part.

## I.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Fed. R. Civ. P. 56(a).

the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[4] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[7] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[8] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation,"[12] and "cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy, and inexpensive determination of every action."[14]

## II.     Uncontroverted Facts:

Dollar General Retail, LLC ("DG Retail") does business as Dollar General. DG Retail is a subsidiary of Dollar General Corporation ("DGC"). DG Retail owns and operates the store where the accident occurred and manages the store and all its employees. DGC does not own, lease, or operate the store.

---

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[10]*Adams*, 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(c)(4).

[12]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[14]*Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

On or about November 7, 2010, Plaintiff entered the Dollar General store located in Park City, Kansas, where she tripped on a folded-over corner of a mat placed just inside the entrance of the store. Surveillance video shows that about five minutes before Plaintiff entered the store, the corner of the mat was kicked over by a customer. The surveillance video further shows four shoppers crossed the mat without any problems in the time between when the mat was flipped over and when Plaintiff tripped over the mat.

As Plaintiff entered the store, she stepped on a folded-over corner of the mat with her left foot. She then took a step forward with her right foot. Her right foot got caught up in the folded portion of the mat. Because her left foot was holding down the corner, the "loop" trapped her right foot and caused Plaintiff to lose her balance and fall forward. Plaintiff landed on her right arm, which fractured about two inches below the shoulder.

Plaintiff was not looking down at the ground where she was walking but instead was looking straight ahead or to the side as she entered. Nothing obstructed Plaintiff's view of the floor mat, and the store was well-lit. Plaintiff testified at her deposition that if she were looking down, her fall would probably not have occurred.

The mat Plaintiff tripped over is rectangular in shape and measures approximately 62 and 1/4 inches by 39 and 3/4 inches. The mat has rounded corners and an anti-skid backing and is about 1/4 inches thick.

Plaintiff's daughter testified she entered the same Dollar General store on or about May 5, 2010, when she accidently kicked over a corner of the mat. The daughter further testified she stopped to fix the mat but did not say anything to anyone believing it was not a big deal.

**III.    Discussion**

A.      Mode of Operation Rule

As the parties note, this case is governed by Kansas substantive law.[15]  In order to establish liability for negligence, the plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages.[16]  In a claim for premises liability, an owner or operator of a place of business that is open to the public owes a duty to the business visitor to use reasonable care, under all of the circumstances, in keeping the business place safe.[17]  The owner or operator of the business must warn the business visitor of any dangerous condition that the owner or operator knows about or should know about if the owner or operator had exercised reasonable care in tending to the business.[18]

Generally, before a defendant may be held liable under Kansas premises liability law for an injury resulting from a dangerous condition, actual or constructive notice of the condition on the part of the defendant must be shown.[19]  In other words, before an owner or operator of a business can be found liable for an injury to a business visitor that resulted from a dangerous condition, it must be determined that the owner or operator had actual knowledge of the condition, or that the condition had existed for such a length of time that in the exercise of

---

[15]*See Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 917 (10th Cir. 1993) (stating choice of law is determined by the substantive law of the state in which the court sits); *Ling v. Jan's Liquors*, 703 P.2d 731 (Kan. 1985) (stating Kansas courts apply the law of the state where tort occurred).

[16]*Kirk v. City of Shawnee*, 10 P.3d 27, 30 (Kan. Ct. App. 2000).

[17]*Endsley v. Am. Drug Stores, Inc.*, 93 P.3d 745, 2004 WL 1609203, at *2 (Kan. Ct. App. 2004) (citing *Thompson v. Beard and Gabelman, Inc.*, 216 P.2d 798, 800 (Kan. 1950)); PIK Civ. 3d 126.03).

[18]*Id.*

[19]*See Kimes v. Unified Sch. Dist. No. 480, Seward City, State of Kan.*, 934 F. Supp. 1275, 1279 (D. Kan. 1996); *Jackson v. K-Mart Corp.*, 840 P.2d 463, 465 (Kan. 1992).

reasonable care, the owner or operator should have known of the condition.[20]

Kansas courts have adopted the "mode of operation rule," which generally allows a plaintiff in a slip and fall case to recover without a proprietor's actual or constructive knowledge of a dangerous condition if the plaintiff can show 1) the proprietor adopted a "mode of operation where a patron's carelessness should be anticipated; and 2) the proprietor fail[ed] to use reasonable measures commensurate with the risk involved to discover the condition and remove it."[21] In other words, if it was reasonably foreseeable a dangerous condition would regularly occur due to the way the store was operated, and the proprietor failed to take reasonable measures to discover and remedy the potential dangerous condition, the mode of operation doctrine applies and a proprietor would be liable.[22] This allows an injured customer to recover "due to a condition inherent in the way the store is operated."[23] The mode of operation doctrine looks to the actual mode of operation, a specific method in which the business conducts itself, not to the events surrounding the accident.[24] Ultimately, a reasonable jury must be able to find the dangerous condition was reasonably foreseeable and that reasonable precautions under the circumstances were not taken.[25]

The mode of operation rule has limitations. As the Kansas Supreme Court noted,

---

[20] *Magness v. Sidmans Restaurants, Inc.*, 402 P.2d 767, 769 (Kan. 1965). *See* PIK Civ. 3d 126.04.

[21] *Jackson*, 840 P.2d at 470.

[22] *Napell v. Aten Dep't Store, Inc.*, 115 F. Supp. 2d 1275, 1280-81 (D. Kan. 2000); PIK 4th 126.05.

[23] *Kimes*, 934 F. Supp. 2d at 1280 (quoting from *Jackson*, 840 P.2d at 470).

[24] *Hembree v. Wal-Mart of Kan.*, 35 P.3d 925, 927 (Kan. Ct. App. 2001).

[25] *See* PIK 4th 126.05

6

> The mode of operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode of operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition.[26]

This underlying hesitation has lead Kansas courts to generally limit the mode of operation doctrine to self-service operations.[27] The nature of such businesses, where shoppers are encouraged to obtain the items they wish to purchase from shelves and containers and move them from one part of the store to another, creates a "reasonable probability that these [slip and fall] risks will occur."[28]

In *Jackson v. K-Mart*, the plaintiff slipped while walking in the children's clothing department of the defendant's store.[29] The plaintiff slipped on "a green liquid substance that was apparently avocado juice."[30] In holding the mode of operation rule applied, the Kansas Supreme Court noted that there was evidence that the store permitted refreshments sold at it's snack bar or purchased elsewhere to be taken into the retail portion of the store.[31]

In *Hembree v. Wal-Mart of Kansas*, the Kansas Court of Appeals determined when the

---

[26] *Jackson*, 840 P.2d at 470 (quoting *Chiara v. Fry's Food Stores of Ariz., Inc.*, 733 P.2d 283, 285-86 (Ariz. 1987)).

[27] *Hembree*, 35 P.3d at 928 (citing *Kimes,* 934 F. Supp. 2d at 1280). *See Fisher v. Big Y Foods, Inc.*, 3 A.3d 919, 928-935 (Conn. 2010) (collecting cases).

[28] *Sheehan v. Roche Bros. Supermarkets, Inc.*, 863 N.E.2d 1276, 1283 (Mass. 2007) (adopting the mode of operation doctrine for Massachusetts after discussing the modern trends in premises liability).

[29] 840 P.2d at 463.

[30] *Id*.

[31] *Id*. at 470.

7

mode of operation rule does not apply.[32] Hembree sued Wal-Mart after slipping on a white, creamy substance.[33] Wal-Mart claimed no employee reported seeing or cleaning up a spill and that employees conducted safety sweeps at certain hours each day to ensure the store's floors were clean.[34] In affirming the district court's judgment on a jury verdict for Wal-Mart, the court held the rule did not apply because Wal-Mart's mode of operation—inviting people to come into the store and carry items around the store—was neither unique nor created a situation in which dangerous conditions could regularly occur.[35] Key to the decision was the finding that "[t]he evidence also established that Wal-Mart had a system for checking for dangerous conditions and had implemented the system.[36] It appears the store was making reasonable safety efforts commensurate with any risks involved in the operation of the store."[37]

Here, Plaintiff contends that because the floor mat was flimsy and thus easily flipped up, it was foreseeable that a dangerous condition would regularly occur. Plaintiff further asserts that "the defendants failed to adopt a particular mode of operation" for dealing with foreseeable risks created by patrons, *i.e.*, kicking over the mat, and that Defendants should have been aware of the problem and used heavier and more durable floor mats. Plaintiff's attempt to establish a mode of operation is misplaced. Use of the mat is not a specific method in which the business conducts

---

[32] 35 P.3d at 927-28

[33] *Id.* at 926

[34] *Id.*

[35] *Id.* at 927.

[36] *Id.* at 927-28.

[37] *Id.*

8

itself, that, is, the nature of the business establishment.[38]  Plaintiff has offered no evidence regarding Defendants' operation, policies, customs or practices that could amount to a mode of operation.  Plaintiff does not allege, for example, that the self-service mode of operation created by Defendants in selling retail merchandise somehow created a foreseeable risk of danger, including tripping and falling on a rug.  Indeed, by asserting that Defendants *failed* to adopt a mode of operation for dealing with foreseeable risks created by patrons, Plaintiff appears to conflate the mode of operation element with reasonable measures to discover and remove dangerous conditions, such as adoption of a safety inspection system.

There is certainly nothing unique about using a floor mat in a retail establishment. "Clearly, a flipped-over rug can occur in any premises, whether it is a self-service retail store, a movie theater, a restaurant or clothing store."[39]  Further, while Plaintiff's daughter testified that she had kicked over a portion of the mat without incident on a previous visit to the Dollar General Store, there is no evidence in the record that the rug was kicked over on a regular basis or even that any other customers had tripped over the rug.  Accordingly, the Court determines that the record contains no facts that bring this case within the class of cases in which the defendant's mode of operation relieves Plaintiff of the burden of proving notice of the dangerous condition.  Defendants' motion for summary judgment is granted on this issue.

### B. Liability of Dollar General Corp.

---

[38]*See Kimes*, 934 F. Supp. 2d at 1280 (quoting *Jackson*, 840 P.2d at 470).

[39]*See Berry v. Staples Conn., Inc.*, No. CV085018858, 2008 WL 4779745, at * 2 (Conn. Super. Oct. 9, 2008) (citing *Jackson*, 840 P.2d at 463) (finding a crease in a rug at a store that a patron slipped and fell on did not constitute a foreseeable risk created by the store's self-serve mode of operation in selling office supplies and equipment).

9

Defendants argue DGC is not the "owner, occupier, or possessor" of the premises where the accident occurred and, therefore, that DGC cannot be held liable for Plaintiff's injuries. Under Kansas law, "to hold a defendant liable for failure to keep premises in a safe condition, the defendant must be the owner, occupier, or possessor of the premises."[40] The "owner, occupier, or possessor" language is essentially concerned with whether the party to be held liable had some sort of control over the premises.[41] Kansas courts follow the Restatement (Second) of Torts, which states that a possessor of land is "one who is in occupation of the land with the intent to *control* it."[42] Control of the property to some degree is essential because a party cannot be held liable for injuries caused by dangerous conditions on the premises unless the party has the ability to remedy the dangerous conditions.[43] Previous Kansas cases have upheld summary judgment in premises liability cases where there was no evidence the party controlled the premises.[44]

Plaintiff presents no evidence that DGC owns, occupies, or possess the premises the premises. DGC's role is limited to its position as the parent company of DG Retail. Plaintiff presents no evidence DGC has any control over the premises or has the ability to remedy any dangerous conditions that may arise, and no evidence in the record indicates DGC had any

---

[40] *Miller v. ZFP Mfg., Co.*, 815 P.2d 506, 513 (Kan. 1991); *see also Schmelzle v. Wal-Mart, Inc.*, 230 F. Supp. 2d 1254, 1259-60 (D. Kan. 2002).

[41] *See Gragg v. Wichita State Univ.*, 934 P.2d 121, 130-31 (Kan. App. 1997*).*

[42] *Miller*, 815 P.2d at 513 (emphasis added).

[43] *Schmelzle*, 230 F. Supp. 2d at 1260; *Gragg*, 934 P.2d at 130-31.

[44] *See Id.* at 130 (discussing *Rogers v. Omega Concrete Sys., Inc.*, 883 P.2d 1204 (Kan. App. 1994)).

control over the premises. In contrast, the parties do not, and cannot, argue that DG Retail owns, operates, and leases the building where the accident occurred. DG Retail manages the store and all the employees of the store are employed by DG Retail.

Although Plaintiff argues the public considers DGC to be the owner of the premises, this argument is irrelevant because Plaintiff provides no facts or precedent to support such a contention. And even if Plaintiff did so, public perception of ownership has no bearing on whether DGC actually owned the property.

Because the record evidence indicates only DG Retail owns, occupies, or possess the premises, only DG Rental is potentially subject to liability. Since DGC is not the owner, occupier, or possessor of the property, DGC owed no duty towards Plaintiff.[45] The Court grants summary judgment on this issue and dismisses all claims against DGC.

### C. Plaintiff's Comparative Negligence

Defendants seek summary judgment that Plaintiff was comparatively negligent as a matter of law. Defendants argue Plaintiff's admission she did not look where she was walking as she entered the store is an admission of negligence. Kansas is a comparative negligence state under K.S.A. § 60-258a.[46] Pursuant to K.S.A. § 60-258a(a), a plaintiff's contributory negligence does not bar that plaintiff from recovering damages for negligence, if the plaintiff's negligence was less than the causal negligence of the party or parties against whom a claim is made. Any award to the plaintiff must be reduced in proportion to the amount of negligence attributed to the

---

[45] *See Id.*

[46] *Sandifer Motors, Inc. v. City of Roeland Park*, 628 P.2d 239, 246 (Kan. Ct. App. 1981).

11

plaintiff.[47]

Typically, the existence of negligence is a question of fact reserved for the jury.[48] A question of whether a plaintiff has any negligence for her own accident "may be resolved on summary judgment when the facts present only one conclusion."[49] When reasonable persons could reach differing conclusions viewing the same evidence, negligence is a question for the jury."[50] Even if comparative negligence is found as a matter of law, apportionment of the fault is for the jury.[51]

Kansas law has long held customers entering a retail store must make reasonable use of their faculties to protect themselves and are required to use the same degree of care a reasonably prudent person would use under the same circumstances.[52] A person entering a store must also "exercise reasonable care in avoiding an open and obvious danger."[53] While having to use reasonable care, a customer entering a store does not have to assume a dangerous condition

---

[47]K.S.A. § 60-258a(a)

[48]*Napell*, 115 F. Supp. 2d at 1278.

[49]*Id.* (citing *Lay v. Kan. Dep't of Transp.*, 928 P.2d 920, 924 (Kan. App. 1996)).

[50]*Chambers v. Skaggs Cos., Inc.*, 732 P.2d 801, 804-05 (Kan. Ct. App. 1987).

[51]*Patton v. TIC United Corp.*, 77 F.3d 1005, 1108-09 (10th Cir. 1996) (discussing K.S.A. § 60-258a) (citing *Arredondo v. Duckwall Stores, Inc.*, 610 P.2d 1107, 1110 (Kan. 1980)); *see DiPietro v. Cessna Aircraft Co.*, 16 P.3d 986, 991 (Kan. App. 2000).

[52]*See Warren v. T. G. & Y. Stores, Co.*, 499 P.2d 201, 203 (Kan. 1972); *see also Little v. Butner*, 348 P.2d 1022, 1031 (Kan. 1960).

[53]*DiPietro*, 16 P.3d at 991 (Kan. Ct. App. 2000); *see also George v. Ayesh*, 295 P.2d 660, 662 (Kan. 1956).

would exist on the floor.[54]

Defendants cite two cases where the plaintiffs were found to be negligent as a matter of law due to each plaintiff's own admission that the fall would not have occurred had they avoided hazards in plain view.[55] But neither case is directly on point, and in this case, when Plaintiff's fall occurred as she was entering the store, there is a factual dispute as to whether a folded over mat just inside a business entrance is an open and obvious danger.[56] Plaintiff argues that a reasonable person does not look at the ground when entering a store due to other dangers a customer must look out for, such as running into other people. Defendants argue a reasonable person looks at the floor due to a high likelihood of change of the type of floor and/or level of the floor. Neither party cites authority in support of their positions. As Kansas courts have held, upon entering the store, one does not have to assume there will be a dangerous condition;[57] absent such an assumption, reasonable minds may differ as to whether Plaintiff used reasonable care to avoid the accident.

When reasonable minds can differ, the existence of negligence is an issue for the jury.[58] The Court denies summary judgment on this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for

---

[54]*Autry v. Walls I. G. A. Foodliner, Inc.*, 497 P.2d 303, 306 (Kan. 1972).

[55]*George*, 295 P.2d at 661-62; *Warren*, 499 P.2d at 202-05.

[56]*See George*, 295 P.2d at 661-62 *and Warren*, 499 P.2d at 205.

[57]*See id.*; *Autry*, 497 P.2d at 306.

[58]*Chambers*, 732 P.2d at 804-05.

Summary Judgment (Doc. 44) is GRANTED in part on the mode of operation issue and the liability of DGC.

**IT IS FURTHER ORDERED** that Defendants' Motion is DENIED with respect to the issue of Plaintiff's comparative fault.

**IT IS SO ORDERED.**

Dated: June 26, 2013

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE